# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRENDAN SODIKOFF,** | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) |
| **RH, US LLC,** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Brendan Sodikoff ("Sodikoff"), by his undersigned attorneys, complains against Defendant RH, US LLC ("RH") as follows:

## The Parties

1. Sodikoff is an individual who is a citizen of the State of Illinois. From June 2016 until August 2019, Sodikoff was an employee of RH (formerly known as "Restoration Hardware") and served as the Founder and Co-President of the RH Hospitality division.

2. RH is a Delaware limited liability company with its principal place of business in Corte Madera, California. RH owns and operates retail stores selling home furnishings.

## Jurisdiction and Venue

3. Pursuant to 28 U.S.C. § 1332(a), jurisdiction is proper because: (a) the amount in controversy exceeds $75,000.00; and (b) there is complete diversity between the parties.

4. This Court has personal jurisdiction over RH because it regularly conducts business within the judicial district of the U.S. District Court for the Northern District of Illinois.

5. Pursuant to 28 U.S.C. § 1391(b), venue in this Court is proper because a substantial part of the events giving rise to the claims in issue occurred within the judicial district of the U.S. District Court for the Northern District of Illinois.

**Factual Background**

6. Prior to working with RH, Sodikoff founded Hogsalt Hospitality Management LLC and its affiliates (collectively, "Hogsalt"), and developed the Chicago-based Hogsalt into a nationally-acclaimed restaurant group.

7. In 2015, RH requested Sodikoff to assist RH in developing a first-of-its-kind retail concept incorporating a high-fashion, high-quality restaurant in Chicago's Gold Coast, in a six-floor, 70,000-square-foot flagship RH store at 1300 N. Dearborn Parkway in Chicago.

8. This location would launch RH's rebranding strategy. At the heart of the space would be an all-season garden encased in an atrium of pyramidal glass and steel, housing a café to be designed and planned by Sodikoff.

9. RH pursued Sodikoff for this venture because of his experience working under world-renowned chefs in Paris and California; his vision to infuse into everyday food the care associated with cooking at fine dining establishments; his reputation as a celebrated restaurateur with (at that time) nine of his own unique stores as well as two doughnut shops; and superlative national accolades including "best burger in America" and "best doughnut in America."

10. On or about September 6, 2015, Sodikoff entered into a one-year consulting services agreement with RH to develop the entire hospitality experience for what would become the 3 Arts Club Café with an adjacent espresso bar and pantry at the RH flagship store in Chicago. He not only curated the menu, but also designed and planned the infrastructure necessary to support the café's operations: driving all aesthetic and functional choices, ranging from floor plan and landscaping to lighting and sound.

11. The consulting agreement also called for Sodikoff to continue to operate the café after its opening, and to consult on other nascent RH hospitality concepts.

12. Due to the value RH recognized in Sodikoff's services, RH did not even wait for the consulting agreement's one-year term to expire before greatly expanding its relationship with Sodikoff.

13. On or about June 14, 2016, RH hired Sodikoff to be the Founder and Co-President of the RH Hospitality division, an entirely new division devoted to hospitality.

14. The terms of Sodikoff's employment with RH are set forth in a written offer letter agreement (the "Offer Letter"). A true and correct copy of the Offer Letter is attached hereto as Exhibit 1.

15. As set forth in the Offer Letter, Sodikoff was entitled to receive (a) an initial base salary that increased over time, (b) a sales commission based upon revenue generated by RH Hospitality, (c) an annual bonus targeted at 50% of his base salary, and (d) stock options for shares in RH's parent company ("RH Parent"), traded on the New York Stock Exchange.

16. The Offer Letter provided for Sodikoff to receive options on 100,000 total shares of RH Parent stock[1], giving Sodikoff the right to purchase RH Parent stock at $25.88 per share. The options vested over four years with 25,000 shares vesting "on each of the yearly anniversaries of your start date such that the option will be fully vested on the fourth yearly anniversary of your start date."

17. By June 2019, options on 75,000 of the 100,000 shares had vested, but Sodikoff had not yet exercised any of the options.

18. At the close of the stock market on October 1, 2019, RH Parent stock was valued at $170.55 per share.

---

[1] The Offer Letter refers to shares of stock in RH, US LLC's "Parent Company" Restoration Hardware Holdings, Inc. After execution of the Offer Letter, Restoration Hardware Holdings, Inc. formally changed its name to RH.

19. RH paid Sodikoff his base salary and a bonus in each of his first three years of employment.

20. Sodikoff also earned a sales commission based on certain revenue generated by RH.

21. For more than three years, RH touted Sodikoff's contributions both publicly and via internal communications to RH employees. RH's frequent interviews with media and press releases contained effusive appreciation for Sodikoff's efforts, and RH's glossy catalogues shipped to customers featured Sodikoff alongside RH merchandise.

22. The Offer Letter defined Sodikoff's position as "part-time". This part-time role would enable Sodikoff to tend to Hogsalt's ongoing growth while contributing to RH Hospitality.

23. The Offer Letter expressly acknowledged that Sodikoff would continue to devote considerable time to his role at Hogsalt. Indeed, RH recognized that Sodikoff's continuing oversight of Hogsalt had potential direct benefits for RH. For example, the Offer Letter contained terms addressing how experienced Hogsalt employees might be brought to an RH location to assist with opening or to improve operations.

24. Over time, RH Hospitality's growth placed increasing demands on Sodikoff's time. Although the Offer Letter expressly deemed his position part-time and permitted him to pursue other business activities, Sodikoff came to believe that it would be in RH's and his best interests to collaborate on a plan for him to ultimately transition out of his RH Hospitality leadership role.

25. Thus, on or about August 1, 2019, Sodikoff sent a text message to Gary Friedman ("Friedman"), RH's Chairman and CEO, who the Offer Letter designates as the person to whom Sodikoff reports.

26. In his text message, Sodikoff told Friedman that he thought that "RH needs full time exec leadership" and explained that "Both orgs [RH and Hogsalt] are simply larger and more complex then [sic] ever and the demands are moving beyond my capacity."

27. Accordingly, Sodikoff suggested that it was "time to look at a leadership transition over the next 6 months (or before if you prefer)," and asked Friedman to let him know "how I can best support you in this transition".

28. On or about August 5, 2019, Friedman sent a reply via text message in which he said he told Sodikoff: "I agree if you feel the current demands of Hogsalt and RH are exceeding your capacity then we need to engage new leadership." Friedman also told Sodikoff that "he looked forward to reconnecting in person."

29. On August 8, 2019, Sodikoff responded to Friedman's text message via email. In his email, Sodikoff asked about Friedman's plans for a more immediate transfer of leadership and asked, "What do you propose as my termination date?" He again offered to provide support to ensure a smooth transition.

30. On August 9, 2019, Friedman responded to Sodikoff's email and claimed that Sodikoff had resigned in the August 1 text message. Friedman also stated that he had "communicated to the RH team that your last day was effective the end of last week."

31. Friedman copied Edward Lee, General Counsel of RH, on the August 9, 2019 email and advised that Lee could assist Sodikoff with the exercise of his stock options. When

Sodikoff emailed Lee about his stock options, Lee confirmed that RH "did process your [Sodikoff's] termination effective as of August 3rd."

32. After August 1, 2019, RH promptly named Sodikoff's replacement. Before the end of August, RH terminated the majority of the executive hospitality leadership team.

33. RH's actions demonstrate that it had an existing plan in place to move forward without Sodikoff prior to August 1, 2019. Therefore, in response to Sodikoff's August 1 request to discuss a transition of leadership, RH chose to immediately terminate his employment.

34. Sodikoff did not resign from his position at RH on August 1, 2019 or at any other time.

35. Nothing in any of Sodikoff's communications to RH, on August 1 or otherwise, indicated that he was resigning, let alone resigning immediately. Instead, Sodikoff expressly stated a desire to discuss an eventual transition of leadership.

36. Since Sodikoff never resigned, the termination of his RH employment was a termination by RH.

37. Given the fact that RH has never claimed any "Cause" for termination, Sodikoff's termination was without "Cause" as that term is defined in the Offer Letter.

38. Moreover, even if RH believed it had a potential basis to terminate Sodikoff for Cause, the Offer Letter would have required RH to give Sodikoff notice of his alleged violations or failures to properly perform his job duties and provide him opportunity to cure such deficiencies. At no time did RH give Sodikoff any such notice or opportunity to cure. Instead, as referenced above, RH praised Sodikoff extensively, both publicly and privately, heavily promoting the overwhelmingly positive impact he had on the company.

39. The Offer Letter includes a right for Sodikoff to receive severance pay if he is terminated without Cause:

**In the event the Company terminates your employment without Cause, you will be eligible to receive continuation of your base salary for a period of twelve (12) months** less any required withholdings including for tax and social security purposes. (emphasis added)

40. The Offer Letter further provides that:

**[I]n the event the Company terminates your employment without "Cause"** (as defined in <u>Attachment A</u>) prior to the date on which this option becomes fully vested, and subject to your signing and not revoking the written release of claims described below…**25,000 of the 100,000 shares covered by this option will accelerate vesting** on the date on which such release becomes effective and irrevocable. (emphasis added)

41. RH has not paid Sodikoff any base salary for the ongoing 12-month period after August 3, 2019, which RH has elected to treat as his last day of employment.

42. Sodikoff is entitled to ongoing base salary payments for 12 months as provided for in the Offer Letter.

43. RH has not accelerated the vesting of the final 25,000 shares covered by the stock option granted to Sodikoff.

44. In addition, RH has not paid Sodikoff his sales commission for the second fiscal quarter of 2019, which accrued prior to RHs terminating his employment. On information and belief, Sodikoff's sales commission for the second fiscal quarter of 2019 is approximately $160,000.00.

### Count I – Violation of the Illinois Wage Payment and Collection Act

45. Sodikoff incorporates paragraphs 1-44 by reference as if fully restated herein.

46. The Offer Letter states: "As you are a resident of Illinois, this offer letter agreement is to be construed in accordance with and governed by the laws of the State of Illinois without giving effect to any choice of law rules."

47. As defined in the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, RH is an employer and Sodikoff was an employee of RH.

48. Under the IWPCA, Sodikoff is entitled to all wages and other compensation that RH owes him pursuant to the Offer Letter.

49. Pursuant to the Offer Letter, Sodikoff is entitled to his sales commission for the second fiscal quarter of 2019 and for all subsequent periods up to his termination.

50. Since RH terminated Sodikoff without Cause, pursuant to the Offer Letter Sodikoff is entitled to severance pay in an amount equal to his base salary at the time of his termination for a period of 12 months. At the time of Sodikoff's termination, his base salary was $550,000.00 per annum.

51. Additionally, since RH terminated Sodikoff without Cause, pursuant to the Offer Letter, Sodikoff is entitled to receive an additional 25,000 shares of RH Parent stock options.

52. RH's failure to pay Sodikoff (a) his sales commissions, (b) his severance pay, and (c) his accelerated stock options is a violation of the IWPCA.

53. Pursuant to the IWPCA, Sodikoff is entitled to recover all amounts due plus 2% interest per month for each month that the amounts remain unpaid. Sodikoff is also entitled to recover his costs and reasonable attorneys' fees incurred in connection with this action.

WHEREFORE, Sodikoff asks the Court to enter judgment in his favor and against RH:

(a) Finding Sodikoff is entitled to (1) his sales commissions for the second fiscal quarter of 2019 and for all subsequent periods up to his termination, (2) his severance pay, and (3) his accelerated stock options;

(b) Awarding Sodikoff damages in the amount to be proven at trial, in excess of $75,000.00, representing his sales commissions and his severance pay;

(c) Awarding Sodikoff 25,000 shares of RH Parent stock options consistent with the applicable terms of the original stock option grant made to Sodikoff;

(d) Awarding Sodikoff statutory interest at a rate of 2% per month on all unpaid compensation owed to him;

(e) Awarding Sodikoff his costs and reasonable attorneys' fees; and

(f) Granting such other relief as the Court deems just and proper.

### Count II – Breach of Contract

54. Sodikoff incorporates paragraphs 1-53 by reference as if fully re-stated herein.

55. The Offer Letter constitutes a valid and enforceable contract between RH and Sodikoff regarding the compensation he is entitled to for the services provided to RH.

56. Sodikoff performed all of his obligations under the Offer Letter.

57. RH has breached the Offer Letter by failing and refusing to pay Sodikoff (a) his sales commissions for the second fiscal quarter of 2019 and for all subsequent periods up to his termination, (b) his severance pay, and (c) his accelerated stock options.

58. Sodikoff has been damaged by RH's breach. Specifically, Sodikoff has not received significant compensation to which he is contractually entitled.

59. Sodikoff's damages are a direct result of RH's failure to honor its contractual obligations to Sodikoff as set forth in the Offer Letter.

WHEREFORE, Sodikoff asks the Court to enter judgment in his favor and against RH:

(a) Finding Sodikoff is entitled to (1) his sales commissions for the second fiscal quarter of 2019 and for all subsequent periods up to his termination, (2) his severance pay, and (3) his accelerated stock options;

(b) Awarding Sodikoff damages in the amount to be proven at trial, in excess of $75,000.00, representing his sales commissions and his severance pay;

(c) Awarding Sodikoff 25,000 shares of RH Parent stock options consistent with the applicable terms of the original stock option grant made to Sodikoff; and

(d) Granting such other relief as the Court deems just and proper.

**BRENDAN SODIKOFF**

By:   */s/ Adam A. Hachikian*
      One of his Attorneys

Steven L. Brenneman (ARDC #6190736)
(sbrenneman@foxswibel.com)
Adam A. Hachikian (ARDC #6283021)
(ahachikian@foxswibel.com)
**Fox Swibel Levin & Carroll LLP**
200 W. Madison St., Suite 3000
Chicago, IL 60606
(312) 224-1200
Firm No. 49915

Dated: October 1, 2019